# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

EVERLENE WILLIAMS,            )
                                     )
        Plaintiff,            )
                                     )
      v.                    )     Case No. 4:15-CV-940 NAB
                                     )
CAROLYN W. COLVIN,          )
Acting Commissioner of Social Security,   )
                                     )
        Defendant.    )

## MEMORANDUM AND ORDER

This is an action under 42 U.S.C. § 405(g) for judicial review of the Commissioner of Social Security's final decision denying Everline Williams' application for disability insurance benefits and supplemental security income (SSI) under the Social Security Act, 42 U.S.C. §§ 416, 423 *et seq.*  Williams alleged disability due to back pain, right rotator cuff injury, arthritis, joint pain, nerve damage, swelling of hands, depression, and sciatica[1].  (Tr. 164.)  The parties have consented to the exercise of authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).  [Doc. 8.]  The Court has reviewed the parties' briefs and the entire administrative record, including the hearing transcripts and the medical evidence.  The Court heard oral argument in this matter on July 26, 2016.  For the reasons set forth below, the Court will affirm the Commissioner's final decision.

---

[1] Sciatica is "pain in the lower back and hip radiating down the back of the thigh into the leg" . . . usually due to herniated lumbar disk compromising a nerve root, most commonly the L5 or S1 root.  Stedman's Medical Dictionary 1602 (27th ed. 2000).

## I.     Background

In May 2013, Williams applied for disability insurance and SSI, alleging disability since August 31, 2010.  (Tr. 137-44.)  The Social Security Administration ("SSA") denied Williams's claim and she filed a timely request for hearing before an administrative law judge ("ALJ").  (Tr. 92-93.)  The SSA granted Williams's request for review and an administrative hearing was held on April 18, 2014.  (Tr. 28-53.)  Williams, represented by counsel, testified at the hearing.  (Tr. 31-52.)  On June 10, 2014, the ALJ found that Williams was not disabled as defined in the Society Security Act.  (Tr. 12-22.)  Williams requested a review of the ALJ's decision from the Appeals Council.  (Tr. 8.)  On May 5, 2015, the Appeals Council of the Social Security Administration denied Williams' request for review.  (Tr. 1-4.)  The decision of the ALJ thus stands as the final decision of the Commissioner.  *See Sims v. Apfel*, 530 U.S. 103, 107 (2000).

Williams filed this appeal on June 16, 2015.  [Doc 1.]  The Commissioner filed an Answer and the certified Administrative Transcript on August 24, 2015.  [Docs. 11, 12.]  Williams filed a Brief in Support of the Complaint on September 23, 2015.  [Doc. 13.]  The Commissioner filed a Brief in Support of the Answer on October 22, 2015.  [Doc. 14.]

## II.     Standard of Review

The Social Security Act defines disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 416(i)(1)(A), 423(d)(1)(A).

The SSA uses a five-step analysis to determine whether a claimant seeking disability benefits is in fact disabled.  20 C.F.R. §§ 404.1520(a)(1), 416.920(a)(1).  First, the claimant must

not be engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). Second, the claimant must establish that he or she has an impairment or combination of impairments that significantly limits his or her ability to perform basic work activities and meets the durational requirements of the Act. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Third, the claimant must establish that his or her impairment meets or equals an impairment listed in the appendix to the applicable regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant's impairments do not meet or equal a listed impairment, the SSA determines the claimant's residual functional capacity (RFC) to perform past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e).

Fourth, the claimant must establish that the impairment prevents him or her from doing past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant meets this burden, the analysis proceeds to step five. At step five, the burden shifts to the Commissioner to establish that the claimant maintains the RFC to perform a significant number of jobs in the national economy. *Singh v. Apfel,* 222 F.3d 448, 451 (8th Cir. 2000). If the claimant satisfies all of the criteria under the five-step evaluation, the ALJ will find the claimant to be disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

The standard of review is narrow. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). This Court reviews decisions of the ALJ to determine whether the decision is supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find adequate support for the ALJ's decision. *Smith v. Shalala,* 31 F.3d 715, 717 (8th Cir. 1994). The court determines whether evidence is substantial by considering evidence that detracts from the Commissioner's decision as well as evidence that supports it. *Cox v. Barnhart*, 471 F.3d 902, 906 (8th Cir. 2006).

The Court may not reverse just because substantial evidence exists that would support a contrary outcome or because the Court would have decided the case differently. *Id.* If, after reviewing the record as a whole, the Court finds it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's finding, the Commissioner's decision must be affirmed. *Masterson v. Barnhart,* 363 F.3d 731, 736 (8th Cir. 2004). To determine whether the ALJ's final decision is supported by substantial evidence, the Court is required to review the administrative record as a whole to consider:

> (1) The findings of credibility made by the ALJ;
>
> (2) The education, background, work history, and age of the claimant;
>
> (3) The medical evidence given by the claimant's treating physician;
>
> (4) The subjective complaints of pain and description of the claimant's physical activity and impairment;
>
> (5) The corroboration by third parties of the claimant's physical impairment;
>
> (6) The testimony of vocational experts based upon prior hypothetical questions which fairly set forth the claimant's physical impairment; and
>
> (7) The testimony of consulting physicians.

*Brand v. Sec'y of Dept. of Health, Educ. & Welfare,* 623 F.2d 523, 527 (8th Cir. 1980).

## III.    Discussion

Williams presents two questions for review. First, she contends that the RFC determination is not supported by substantial evidence. Second, she contends that the ALJ failed to provide a proper analysis of her past work at step four before determining whether she could

perform such work. The Commissioner contends that the ALJ's decision is supported by substantial evidence in the record as a whole and should be affirmed.

## A. Residual Functional Capacity Determination

The ALJ found that Williams had the following severe impairments: degenerative disc disease of the cervical spine, marginal narrowing of the lumber spine L5-S1 disc space; slight rights shoulder degenerative spur formation, and obesity. (Tr. 14.) The RFC is defined as what the claimant can do despite his or her limitations, and includes an assessment of physical abilities and mental impairments. 20 C.F.R. §§ 404.1545(a), 416.945(a). The RFC is a function-by-function assessment of an individual's ability to do work related activities on a regular and continuing basis.[2] SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). The ALJ determined that Williams had the RFC to perform the full range of light work, which is defined as work that involves "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. §§ 404.1567(b), 416.967(b). Jobs considered light work require a good deal of walking or standing or if it involves sitting most of the time with some pushing and pulling of arm or leg controls. *Id.* To be considered capable of performing a full or wide range of light work, a claimant must have the ability to do substantially all the aforementioned activities. *Id.*

It is the ALJ's responsibility to determine the claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and the claimant's own descriptions of his limitations. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). An RFC determination made by an ALJ will be upheld if it is supported by substantial evidence in the record. *See Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006). "[T]he ALJ is not qualified

---

[2] A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule. SSR 96-8p, 1996 WL 374184, at *1.

to give a medical opinion but may rely on medical evidence in the record." *Wilcockson v. Astrue*, 540 F.3d 878, 881 (8th Cir. 2008). In making a disability determination, the ALJ shall "always consider the medical opinions in the case record together with the rest of the relevant evidence in the record." 20 C.F.R. §§ 404.1527(b), 416.927(b); *see also Heino v. Astrue*, 578 F.3d 873, 879 (8th Cir. 2009).

Williams contends that the ALJ's RFC determination is not supported by substantial evidence, because the ALJ rejected the only opinion evidence concerning Williams' abilities and the remaining medical evidence does not provide for the physical restrictions assessed by the ALJ. The Court disagrees.

In this case, Williams received two physical consultative examinations. (Tr. 327-33, 431-38.) First, Dr. David Bradley performed a consultative examination on September 1, 2012. (Tr. 327-33.) Upon examination, Dr. Bradley noted that Williams had difficulty raising from the chair and examining table due to reported pain. (Tr. 328.) He observed palpable tenderness of the cervical, thoracic, and lumbar spine and muscular tenderness was noted in her upper and lower back and bilateral shoulders. (Tr. 329.) Dr. Bradley noted a "significantly decreased range of motion at both shoulders due to stated pain." (Tr. 329.) Dr. Bradley opined that "patient's examination would be consistent with both degenerative disc disease of the cervical spine and possible rotator cuff/tendinitis of both shoulders." (Tr. 329.) Dr. Bradley then questioned Williams' effort during the examination as follows:

> The patient does have signs of sciatica, but her complaints of tenderness over both the spine and all areas of the musculature are inconsistent with a single diagnosis. She also exhibited significant weakness in both of her LE which would indicate B/L radiculopathy, but this is entirely dependent on patient effort which is questionable in this case.

(Tr. 329.)  Dr. Bradley then stated:

> Although I believe that the patient does have some degree of degenerative spinal and rotator cuff disease, I question the patient's effort on examination and her excessive complaints of pain with minimal palpation or any movement.  I believe that obtaining the records of the patient's stated previous MRI and nerve conduction study would be of benefit to determine the extent of disease. Based on her current history and physical examination, which is dependent on patient's full effort, she would have significant limitation in standing or walking for prolonged periods of time and carrying or lifting over 10 lbs. for a sustained period of time.  She would have no limitations in speaking, hearing, or traveling.

(Tr. 329.)

The ALJ gave Dr. Bradley's opinion little weight, because Dr. Bradley noted that his opinion was based on the symptoms as reported by Williams and he questioned her effort on examination and excessive complaints of pain.  (Tr. 20.)  The ALJ also noted that although Williams reported to Dr. Bradley that she had a nerve conduction study that detailed nerve damage, the nerve conduction study in the record was normal.  (Tr. 18, 226, 238, 327, 360-64.)  Further, the ALJ noted that Williams told Dr. Bradley that she had an MRI of her shoulder, which showed she had a frozen shoulder and a rotator cuff injury, but there is no MRI of her shoulder in the administrative record.  (Tr. 18, 327.)  An x-ray of Williams' right shoulder a few weeks after Dr. Bradley's consultative examination showed a "slight degenerative spur formation of the inferior glenoid with an os acromiale."  (Tr. 336.)  An x-ray of her lumbar spine on the same date was normal.  (Tr. 337.)  Based on the foregoing, the Court finds that the ALJ did not err in granting little weight to Dr. Bradley's opinion.  Dr. Bradley noted that he questioned Williams' effort on the examination and needed additional information from Williams' medical records.  Because the objective medical records near the time of Williams' consultative examination contradicted most of her claims and she made a less than full effort during the

examination, the ALJ's decision to grant little weight to Dr. Bradley's opinion is supported by substantial evidence in the record as a whole.

Next, Williams contends that the other objective medical evidence does not demonstrate substantial evidence to support the RFC determination and the ALJ should have sought additional evidence. Again, the Court disagrees.

The ALJ has a duty to fully develop the record. *Smith v. Barnhart*, 435 F.3d 926, 930 (8th Cir. 2006). In some cases, this duty requires the ALJ to obtain additional medical evidence, such as a consultative examination of the claimant, before rendering a decision. *See* 20 C.F.R. § 404.1519a(b). "There is no bright line test for determining when the [Commissioner] has failed to develop the record. The determination in each case must be made on a case by case basis." *Battles v. Shalala*, 36 F.3d 43, 45 (8th Cir. 1994). A claimant for social security disability benefits has the responsibility to provide medical evidence demonstrating the existence of an impairment and its severity during the period of disability and how the impairment affects the claimant's functioning. 20 C.F.R. § 404.1512.

"The ALJ is required to order medical examinations and tests only if the medical records presented to him do not give sufficient medical evidence to determine whether the claimant is disabled." *McCoy v. Astrue*, 648 F.3d 605, 612 (8th Cir. 2011) (citing *Conley v. Bowen*, 781 F.2d 143, 146 (8th Cir. 1986)). Therefore, "[a]n ALJ is permitted to issue a decision without obtaining additional medical evidence so long as other evidence in the record provides a sufficient basis for the ALJ's decision." *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995).

On November 9, 2012, a Cooperative Investigations Unit (CDI) investigator conducted surveillance of Williams as she traveled to an x-ray appointment. (Tr. 341-49.) The investigation was prompted by Williams' "questionable effort" during her September 2012

consultative examination with Dr. Bradley and inconsistent diagnostic imaging. (Tr. 348.) At the September 2012 consultative examination, Williams reported to Dr. Bradley that continuous pain in her right shoulder and neck caused frequent insomnia and intractable pain. (Tr. 327.) Williams stated carrying any object caused her shooting pain in her right arm and that she had numbness and tingling in her right hand and difficulty grasping objects. (Tr. 327.) Williams also complained of back and hip pain and stated she could not walk for more than a couple of blocks. (Tr. 328.) During the surveillance, the CDI investigator observed that Williams never used an assistive device and her gait and walk were always normal. (Tr. 346.) He also observed that she did not have difficulty walking or using her hands. (Tr. 346.) The investigator observed her ascending stairs quickly and without any difficulty. (Tr. 345.) Williams walked a good distance to the MetroLink, changed trains, walked to the building for her appointment and then walked across the street to the mall and shopped for forty-five minutes. The x-ray of the cervical spine taken on the same date showed degenerative disc disease at C-5/6 and C-6/7. (Tr. 339.) At the administrative hearing, Williams' attorney stated that Williams had a twin sister who she lived with at the time and he "was not sure that was even [Williams] they were observing.[3]" (Tr. 30.)

Williams had two emergency room visits in April and May 2013, where she complained of lower back pain. She was diagnosed with sciatica and it was noted that she had decreased and painful range of motion. (Tr. 451, 460.) It was also noted that her weight bearing was painful, but normal and the neuro function and reflexes in her back were normal. (Tr. 451, 460.)

---

[3] The ALJ found the "twin sister" explanation implausible and severely damaging to Williams' credibility. (Tr. 20-21.) The ALJ stated that "given the investigation was scheduled to coincide with the claimant's consultative examination, it is highly unlikely that her sister had an appointment in the same building at the same time as the claimant's examination." (Tr. 21.)

Williams began treatment with Dr. DeSilvia in July 2013 and was diagnosed with gastroesophageal reflux disease (GERD), osteoarthritis, and sciatica.  (Tr. 427.)

On August 29, 2013 Dr. Arjun Bhattacharya performed a consultative examination.  (Tr. 431-38.)  During this examination, Dr. Bhattacharya noted that Williams' straight leg raising is possible to 60 degrees on both sides, but her deep tendon reflexes, knee, and ankle jerks were normal.  He wrote that she had normal sensation in both lower extremities, but she had difficulty getting on and off the examination table and was using a cane to ambulate across the examination hall.  (Tr. 432-33.)  She was unable to do toe-heel.  (Tr. 433.)  Dr. Bhattacharya wrote that Williams had difficulty in abduction above 90 degrees in her right shoulder, but there was no deformity and a previous x-ray of her right shoulder was negative.  (Tr. 433.)  He noted that Williams "winced" on even the slightest touch to the right shoulder."  (Tr. 433.)  He also noted that there was no evidence of swelling of her hands, she had full range of movement in her fingers, her grip was normal, and she had normal sensation and fine and dexterous finger control movements.  (Tr. 433.)  Dr. Bhattacharya wrote that it was difficult to assess Williams' motor and sensory systems, because she complained of pain with even minor degrees of movement of all joints.  (Tr. 433.)  Dr. Bhattacharya wrote that Williams gave a poor effort during the examination.  (Tr. 437-38.)

On November 13, 2013, x-rays were performed on Williams' cervical spine, lumbar spine, and both knees.  (Tr. 509.)  The x-rays of the knees indicated normal knees.  (Tr. 509.)  The x-ray of the cervical spine indicated multi-level degenerative disc disease from C3-C4 through C5-C6 and less so C6-C7.  (Tr. 509.)

At her administrative hearing in April 2014, Williams testified that she received treatment for depression at least once a month, but that she had not been prescribed any

medication for depression.  (Tr. 44-45.)  The medical records show that she was diagnosed with mild depression and referred to counseling on October 23, 2103.  (Tr. 501-502.)  Williams met with Dr. Jacqueline McFadden and licensed clinical social worker Rachana Pradhan in October and November 2013 and February 2014.  (Tr. 487-88, 497-502.)  They diagnosed Williams with inadequate material resources[4] and provided other specified counseling[5].  (Tr. 487, 497, 499, 502.)

Based on all of the evidence in the record as a whole, including Plaintiff's testimony, the objective medical testing, the consultative examinations, and the CDI investigation, the Court finds that the RFC determination is supported by substantial evidence.  The ALJ was not required to seek additional evidence.  First, Plaintiff failed to address the substantial credibility issues outlined in the ALJ's decision.  In considering subjective complaints, the ALJ must fully consider all of the evidence presented, including the claimant's prior work record, and observations by third parties and treating examining physicians relating to such matters as:

(1) The claimant's daily activities;

(2) The subjective evidence of the duration, frequency, and intensity of the claimant's pain;

(3) Any precipitating or aggravating factors;

(4) The dosage, effectiveness, and side effects of any medication; and

[4] Inadequate material resources category is used for "individuals who meet eligibility criteria for social or welfare support, but are not receiving such support, who receive support that is insufficient to address their needs, or who otherwise lack access to needed insurance or support programs."  Diagnostic and Statistical Manual of Mental Disorders 724 (5[h] ed. 2013) ("DSM-V").
[5] Other specified counseling category is "used when counseling is provided or advice/consultation is sought for a problem" that is not specified elsewhere, *e.g.*, "spiritual or religious counseling, dietary counseling, and counseling on nicotine use." DSM-V at 725.

(5) The claimant's functional restrictions.

*Polaski v. Heckler*, 725 F.2d 1320, 1322 (8th Cir. 1984). It is not enough that the record contains inconsistencies; the ALJ is required to specifically express that he or she considered all of the evidence. *Id.* Although an ALJ may not discredit a claimant's subjective pain allegations solely because they are not fully supported by objective medical evidence, an ALJ is entitled to make a factual determination that a claimant's subjective pain complaints are not credible in light of objective medical evidence to the contrary." *Gonzales v. Barnhart*, 465 F.3d 890, 895 (8th Cir. 2006).

During both consultative examinations, the doctors stated that Williams made less than a good effort on the examination and greatly exaggerated her symptoms. (Tr. 329, 333, 437-38.) The CDI investigator observed and recorded Williams performing activities substantially greater than her alleged limitations. The objective medical testing did not fully substantiate Williams' allegations. It is evident that Williams has some back problems, but there is no evidence supporting Williams' substantial allegations of pain and lack of mobility. There is evidence of progressive worsening of her symptoms, but the record does not support a finding of disability or a more restrictive RFC. Moreover, Williams has received very conservative treatment for the level of limitations she has alleged. It is Williams' burden to prove her RFC and she has not met that burden. Finally, the Court finds that the ALJ adequately explained how the evidence supported his findings that she could perform light work.

**B.      Step Four Analysis**

Next, Williams claims that the ALJ erred at step four by failing to provide a proper analysis of Williams' past work at step four before determining that she could perform her past relevant work. A claimant who can perform his or her past relevant work, as he or she actually

performed it, is not disabled at step four even though the claimant would be unable to perform that work as it is generally performed in the national economy. *See Wagner v. Astrue*, 499 F.3d 842, 853 (8th Cir. 2007) (quoting *Jones v. Chater*, 86 F.3d 823, 826 (8th Cir. 1996)); *see also Lowe v. Apfel*, 226 F.3d 969, 973 (8th Cir. 2000) ("Where the claimant has the residual functional capacity to do either the specific work previously done or the same type of work as it is generally performed in the national economy, the claimant is found not to be disabled.") (citing *Jones*, 86 F.3d at 826; 20 C.F.R. §§ 404.1520(e); 416.920(e)). "The claimant is the primary source for vocational documentation, and statements by the claimant regarding past work are generally sufficient for determining skill level; exertional demands and nonexertional demands of such work." SSR 82-62, 1982 WL 31386 at *3 (1982). "The decision as to whether the claimant retains the functional capacity to perform past work which has current relevance has far-reaching implications and must be developed and explained fully in the disability decision." *Id.* "Since this is an important, and in some instances, a controlling issue, every effort must be made to secure evidence that resolves the issue as clearly and explicitly as circumstances permit." *Id.* If the claimant's past relevant work is not developed in full detail, the Court must determine whether the record contains enough information on past work to permit a decision as to the individual's ability to return to such past work (or to do other work). *Battles v. Sullivan*, 902 F.2d 657, 659 (8th Cir. 1990) (citing SSR 82-62 at *3). "[W]here the record contains substantial evidence that claimant can perform past work, the ALJ's failure to develop past work record in full detail does not require remand." *Wehrenbrecht v. Colvin*, 4:12-CV-1788 NCC, 2014 WL 4639145 at *13 (E.D. Mo. Sept. 16, 2014).

In this case, the ALJ stated that "as described by the claimant in her testimony, both jobs, as she did them, were within the limitations of light exertional level." (Tr. 21.) Plaintiff testified

about two jobs that the parties do not dispute constitute her past relevant work as a production line worker and as a cook. (Tr. 32-35.) Plaintiff testified regarding the sitting and standing requirements, the weight lifting requirements, and bending and squatting requirements. (Tr. 32-35.) Plaintiff contends that the ALJ's short analysis did not provide "explicit findings" regarding the demands of Williams' past relevant work. Williams contends that her testimony does not establish whether the work was within the limitations of light work as defined by the ALJ. The Commissioner contends that the ALJ's decision is supported by Williams' testimony and the Work History Report completed by Williams that shows the descriptions she provided of the cook and production worker fit within the light work category. (Tr. 189-92.)

The Court has reviewed the evidence and finds that the ALJ's determination that Williams could perform her past relevant work is supported by substantial evidence. Although the ALJ did not fully articulate the requirements of Williams' past work in the opinion, he described in detail the information contained in Williams' work history report and relied upon Williams' testimony regarding the requirements of her past work as a production worker and cook. (Tr. 17-18, 21.) The ALJ's explanation was sufficient to establish Williams' ability to perform her past relevant work. *See Battles*, 902 F.2d at 659-60, *Rosa v. Astrue*, 708 F.Supp.2d 941, 957 (E.D. Mo. 2010); *Sanders v. Astrue*, No. 4:11-CV-1735 RWS (TIA), 2013 WL 1282330 at *12 (E.D. Mo. 2013). The Court finds that the Eighth Circuit's decision in *Pfitzner v. Apfel* to be distinguishable. *Pfitzner v. Apfel*, 169 F.3d 566 (8th Cir. 1999). In that case the court found that because the ALJ failed specify the details of the plaintiff's RFC, substantial evidence could not support the ALJ's conclusion that plaintiff retained functional capacity to return to his past work. *Id.* at 568-69. In this case, the Court has held that the RFC determination was supported by substantial evidence in the record as a whole. Therefore, the

Court finds that there is substantial evidence to support the ALJ's determination that Williams could return to her past relevant work.

## IV.     Conclusion

The Court finds that substantial evidence supports the ALJ's decision as a whole.  A review of the record as a whole demonstrates that Williams has some restrictions in her functioning and ability to perform work related activities, however, she did not carry her burden to prove a more restrictive RFC determination.  *See Pearsall*, 274 F.3d at 1217 (it is the claimant's burden, not the Social Security Commissioner's burden, to prove the claimant's RFC).

Accordingly,

**IT IS HEREBY ORDERED** that the relief requested in Plaintiff's Complaint and Brief in Support of Complaint is **DENIED**.  [Docs. 1, 13.]

**IT IS FURTHER ORDERED** that the Court will enter a judgment in favor of the Commissioner affirming the decision of the administrative law judge.


Dated this 26th day of July, 2016.

      /s/ Nannette A. Baker
NANNETTE A. BAKER
UNITED STATES MAGISTRATE JUDGE